FILED
2026 Sep-21 AM 10:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KAITLIN WALDEN,** | } | |
| **Plaintiff,** | } | |
| **v.** | } | **Case No. 2:25-cv-399-ACA** |
| **ROBINS & MORTON, LLC,** | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff Kaitlin Walden worked for Defendant The Robins & Morton Group in its human resources department.[1] Ms. Walden received positive performance reviews and two promotions. No one informed Ms. Walden of any complaints or performance issues. But in August 2024, she was abruptly fired, and this lawsuit followed. Ms. Walden alleges that Robins & Morton discriminated against her based on her race and sex, asserting five causes of action: race discrimination in violation of Title VII ("Count One" and "Count Four"), race discrimination in violation of 42 U.S.C. § 1981 ("Count Two" and "Count Five"), and sex discrimination in violation of Title VII ("Count Three").[2]

[1] Ms. Walden's complaint names "Robins & Morton LLC" as the defendant. The court uses the entity's correct name. (*See* doc. 6 at 1 n.1).
[2] Ms. Walden's complaint mislabels the third cause of action as Count Four, the fourth cause of action as Count Five, and the fifth cause of action as Count Six. (Doc. 1 at 8–12). The court refers to the causes of action by their correct number.

Robins & Morton moves for summary judgment on all claims. (Doc. 17). The court **WILL GRANT** the motion and **WILL ENTER SUMMARY JUDGMENT** in favor of Robins & Morton and against Ms. Walden on all claims.

## I. BACKGROUND

At the summary judgment stage, the court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve[s] all reasonable doubts about the facts in favor of the non-movant." *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the nonmovant. *See Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

In September 2021, Ms. Comer (a White woman) hired Ms. Walden (a Black woman) as a learning and career development coordinator in Robins & Morton's human resources department. (Doc. 18-1 at 4, 50; doc. 18-2 at 30; doc. 21-1 ¶ 3; doc. 1 ¶¶ 11–12; doc. 6 ¶¶ 11–12). Ms. Walden performed well in this position. (Doc. 18-2 at 30–31). Ms. Comer promoted Ms. Walden to specialist in September 2022. (*Id.* at 31). Ms. Walden also performed well in this role. (*Id.*). In April 2024, Ms. Comer promoted Ms. Walden to the role of manager. (*Id.*).

Shortly after Ms. Walden was promoted to manager, Ms. Comer began to receive reports of issues with Ms. Walden's performance. (*Id.*; doc. 18-1 at 17). An employee that Ms. Walden supervised, Sammey Gorham, reported several complaints. (Doc. 18-2 at 41; doc. 18-3 at 10). First, Ms. Gorham felt Ms. Walden acted unprofessionally. (Doc. 18-3 at 10). For example, Ms. Gorham reported that Ms. Walden required her to sit in Ms. Walden's office while she worked and that Ms. Walden micromanaged her. (Doc. 18-2 at 41). Second, Ms. Walden directed Ms. Gorham to complete a task that Ms. Comer viewed as "incredibly time consuming and unnecessary." (*Id.* at 38). Third, Ms. Gorham reported that Ms. Walden was bullying her. (Doc. 18-1 at 8; doc. 18-3 at 27–28). Other employees also reported to Ms. Comer that they had negative work experiences with Ms. Walden. (Doc. 18-2 at 41, 43).

In June 2024, Ms. Comer also "receiv[ed] reports" that Ms. Walden would leave the office early or not show up on days that Ms. Comer was not in the office. (Doc. 18-2 at 42). In late July, team members reported that they could not connect with Ms. Walden on days she worked from home. (*Id.* at 34). Some outside vendors told Ms. Comer that they were unable to contact Ms. Walden during work hours. (*Id.* at 44). Ms. Gorham reported that Ms. Walden routinely left work early or would not show up at all. (Doc. 18-3 at 28).

In her role as manager, Ms. Walden was expected to use and promote certain software platforms. (Doc. 18-1 at 19; doc. 18-2 at 35–37). But one of Ms. Walden's supervisees reported that she was rude when he sought direction on how to use one of these software platforms. (Doc. 18-2 at 41). And even though Ms. Walden was responsible for the program and "should have known everything there was to know" about it (doc. 18-1 at 22), the employee reported that Ms. Walden could not provide any direction and referred him to an employee in a different department for help (*id.*; doc. 18-2 at 41). However, in the summer of 2024, Ms. Walden also received some positive reviews on her performance. (*See* doc. 21-5). Her coworkers rated her performance positively on a survey dated August 7, 2024. (*Id.* at 6–8). Ms. Comer provided mixed feedback on this survey. (*Id.*).

In August 2024, Ms. Comer met with Ms. Walden and terminated her employment. (Doc. 18-2 at 45). Prior to the termination, the only other communication Ms. Comer provided Ms. Walden about her performance was a statement that Ms. Walden should call people for quicker resolution of issues. (Doc. 21-1 ¶¶ 9, 13). At the time of her termination, Ms. Walden was the only black employee in the human resources department. (Doc. 18-2 at 51).

## II. DISCUSSION

Robins & Morton moves for summary judgment on "all of the plaintiff's claims." (Doc. 17 at 1). Summary judgment is appropriate when "the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Before turning to the merits, the court pauses to outline the claims asserted in the complaint and Robins & Morton's arguments. Ms. Walden's complaint alleges five causes of action. (*See* doc. 1 at 7–12). The first two claims—one under Title VII and one under § 1981—allege that Robins & Morton fired Ms. Walden when employees of different races received less severe discipline for the same conduct. (*Id.* ¶¶ 50–60). The final two claims (under the same two statutes) make similar allegations. (*Id.* ¶¶ 67–79). The court is left unsure of the difference between the two pairs of claims, but it appears that Counts One and Two allege discrimination under the evidentiary burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and Counts Four and Five allege discrimination under the convincing mosaic standard. (*Id.* ¶¶ 50–60, 67–79). But the *McDonnell Douglas* and convincing mosaic standards are evidentiary standards at summary judgment—not pleading requirements. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). So the court is unsure why the two frameworks are separated into different claims.

On top of this, Robins & Morton's motion asserts that it moves for summary judgment on all claims, but discusses the facts of the race discrimination claims concurrently as though they apply to both pairs of claims. (*See* doc. 19 at 13–24).

And it argues that Ms. Walden cannot satisfy either the *McDonnell Douglas* or convincing mosaic standards. (*Id.*). Ms. Walden's response does not assert that Robins & Morton failed to respond to some other asserted race discrimination claim. (Doc. 22 at 21–30). And she argues that her claims must proceed to trial under both the *McDonnell Douglas* and convincing mosaic frameworks. (*Id.*). Accordingly, the court will mirror the parties' briefings and consider the *McDonnell Douglas* framework under Counts One and Two and the convincing mosaic under Counts Four and Five.

1. Counts One and Two

Counts One and Two assert that Robins & Morton discriminated against Ms. Walden because of her race, violating Title VII and § 1981. (Doc. 1 ¶¶ 50–60). Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race." 42 U.S.C. § 2000e-2(a). Section 1981 similarly prohibits race discrimination. 42 U.S.C. § 1981(a). When a plaintiff relies on the same set of facts for both a Title VII and § 1981 claim, as Ms. Walden has done here, the claims "have the same requirements of proof and use the same analytical framework." *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256–57 (11th Cir. 2012) (quotation marks omitted).

"When proceeding under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc). To make a *prima facie* case of discrimination, Ms. Walden must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) Robins & Morton treated similarly situated employees outside of her protected class more favorably; and (4) she was qualified to do her job. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

Robins & Morton argues that Ms. Walden cannot satisfy her *prima facie* burden because she cannot show it treated a similarly situated employee more favorably. (Doc. 19 at 15–21). Ms. Walden responds that she has presented evidence of a comparator, Laurie Wright, who was a similarly situated white woman treated more favorably than Ms. Walden, and who ultimately replaced Ms. Walden. (Doc. 22 at 26–30).

A comparator sufficient to establish a *prima facie* case must be "similarly situated in all material respects." *Lewis*, 918 F.3d at 1218. This is a case-specific analysis, but generally means the plaintiff and her comparator would have "engaged in the same basic conduct (or misconduct)," "been subject to the same employment policy, guidelines, or rule," "been under the jurisdiction of the same supervisor," and share a materially similar "employment or disciplinary history." *Id.* at 1227–28. In

other words, a plaintiff and her comparator "must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Id.* at 1228 (quotation marks omitted).

In 2024, Ms. Wright was employed as the director of human resources and reported directly to Ms. Comer. (Doc. 18-4 ¶ 11). Before that, she worked as a manager in human resources and supervised Ms. Walden. (Doc. 18-1 at 9). Ms. Wright's supervisees, including Ms. Walden, reported that Ms. Wright was bullying and acted passive aggressively toward her direct reports. (*Id.* at 9, 12). Ms. Comer "coached" Ms. Wright about her tone, and no disciplinary actions were taken against her. (Doc. 18-2 at 50). Ms. Wright received a promotion after the accusations were made against her. (Doc. 18-1 at 18).

Ms. Wright and Ms. Walden are not similarly situated. Both reported to Ms. Comer and held similar positions when they were accused of not helping on assignments and bullying their supervisees. (*Id.* at 9, 12, 17–18; doc. 21-11 at 2). But Ms. Walden was accused of more severe misconduct than Ms. Wright: Ms. Comer believed that Ms. Walden did not complete key job responsibilities (doc. 18-1 at 22; doc. 18-2 at 41), was frequently absent from the office and unresponsive when working from home (doc. 18-2 at 42, 44), and was rude to senior management and vendors (*id.* at 41, 44). Ms. Walden provides no evidence that Ms. Wright engaged in similar misconduct. (*See* doc. 22 at 26–28). Accordingly, Ms. Walden is

not similarly situated in all material respects. *See Lewis*, 918 F.3d at 1228 ("An employer is well within its rights to accord different treatment to employees who are differently situated in material respects—*e.g.*, who engaged in different conduct.") (quotation marks omitted).

Ms. Walden also argues that she has satisfied her *prima facie* case of discrimination because she provided evidence that she was replaced by a white woman. (Doc. 22 at 28–30; *see* doc. 18-2 at 31, 51). But whether an employer subsequently replaced a plaintiff is not an element of a Title VII or § 1981 *prima facie* race discrimination claim, rather it is a *prima facie* element of age discrimination under the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"). *See*, *e.g.*, *Reynolds v. CLP Corp.*, 812 F.2d 671, 674 (11th Cir. 1987); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 & n.7 (11th Cir. 1987). Indeed, Ms. Walden cites only an ADEA and ADA case to support her argument. (Doc. 22 at 28–30 (citing *Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1271 (11th Cir. 2014)). So evidence that Ms. Gorham and Ms. Wright assumed much of Ms. Walden's responsibilities after she was terminated does not establish her *prima facie* case of race discrimination.

Accordingly, Ms. Walden has not satisfied her burden of establishing a *prima facie* case under *McDonnell Douglas*. The court therefore **WILL GRANT** the motion with respect to Counts One and Two.

2. Counts Four and Five

Counts Four and Five assert that a convincing mosaic of circumstantial evidence shows that Robins & Morton discriminated against Ms. Walden because of her race in violation of Title VII and § 1981. (Doc. 1 ¶¶ 67–79). "The convincing mosaic approach is—in its entirety—the summary judgment standard." *McCreight v. AuburnBank*, 117 F.4th 1322, 1335 (11th Cir. 2024). So Ms. Walden must produce enough evidence to allow "a reasonable jury [to] infer illegal discrimination." *Id.* Evidence that may be probative of intentional discrimination includes "(1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Ismael v. Roundtree*, 161 F.4th 752, 760 (11th Cir. 2025) (quotation marks and alteration omitted).

Ms. Walden presents the following pieces of evidence to support her mosaic: (1) Robins & Morton generally provided employees notice and an opportunity to improve performance deficiencies before terminating them (doc. 22 at 22–23); (2) a white women took over her job responsibilities (*id.* at 24, 28–30); (3) Ms. Comer's basis for terminating Ms. Walden—complaints of her being absent, unprofessional, difficult to reach, and unable to perform her job tasks—are pretextual (*id.* at 24–25, 31–35); and (4) Ms. Gorham acted with discriminatory animus in remarking that she

perceived Ms. Walden as "unprofessional" and "aggressive" and that she felt uncomfortable providing feedback to her. (*Id.* at 24–25.) The court discusses each category of evidence in turn.

First, Ms. Walden presents evidence for six comparators, arguing that those individuals received notice and an opportunity to correct their actions before termination. (Doc. 22 at 22–23). But five proposed comparators did not work within the human resources department or report to Ms. Comer. (Doc. 18-1 at 10; doc. 18-2 at 110; doc. 18-4 at 3–4 ¶¶ 6, 8–9–10; doc. 21-7 at 7–9). Ms. Walden presents no evidence that Ms. Comer participated in these actions or that she even knew about them. Actions not taken by Ms. Comer cannot show that she acted with discriminatory animus. *See Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002) ("When evaluating a charge of employment discrimination, [the court] must focus on the actual knowledge and actions of the decision-maker").

Ms. Walden's only remaining comparator is Ms. Wright, who worked in human resources under Ms. Comer's supervision. (*See* doc. 22 at 23; doc. 18-1 at 9; doc. 21-11 at 2). But as explained above, Ms. Wright and Ms. Walden were accused of different conduct. (*See id.* at 9, 12, 17–18; doc. 21-11 at 2). Although the convincing mosaic inquiry does not require similarity in all material respects, "distinguishable comparators, standing alone, do not raise a reasonable inference of

unlawful conduct." *Johnson v. Miami-Dade Cnty.*, 169 F.4th 1301, 1310 (11th Cir. 2026); *see also Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1312 (11th Cir. 2023) (rejecting comparator evidence under a convincing mosaic inquiry because the proposed comparators were not engaged in a similar degree of misconduct).

Second, Ms. Walden highlights that she was the only Black employee in the human resources department and that Ms. Wright, a White employee, performed her responsibilities after she was terminated. (*Id.* at 24). Yet Ms. Walden offers no argument to connect these two facts to any discriminatory animus. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact."). Instead, Robins & Morton's undisputed evidence shows that Ms. Wright took on Ms. Walden's responsibilities because Ms. Wright formerly held Ms. Walden's position. (Doc. 18-2 at 31, 51). A plaintiff cannot show intentional discrimination merely by establishing that someone outside their protected class received their position. *See*, *e.g.*, *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163–64 (11th Cir. 2006); *see also Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1020 (11th Cir. 2023) ("Being replaced by someone outside one's protected class . . . is not enough to carry the day on the substantive question of discrimination.").

Third, Ms. Walden maintains that she can show each proffered reason for her termination was pretextual. Ms. Walden specifically argues that several allegations

leading to her termination were false and that complaints were not communicated to her. (Doc. 22 at 31–33). But "the pretext inquiry centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1218 (11th Cir. 2021). Ms. Walden presents no evidence that Ms. Comer did not receive the various complaints from employees and vendors or that she did "not honestly believe" them. *See id.*; (*see* doc. 22 at 34). So Ms. Walden has not shown that the proffered reasons contained "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that "a reasonable factfinder could find them unworthy of credence." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (en banc) (quotation omitted).

Finally, Ms. Walden argues that Ms. Gorham's actions contribute to her mosaic. (Doc. 22 at 24–25). A non-decisionmaker's actions cannot show that the decisionmaker acted with discriminatory animus unless the plaintiff connects the animus to the decisionmaker. *See Melton v. I-10 Truck Ctr. Inc*, 166 F.4th 905, 913 (11th Cir. 2026). Ms. Walden has not produced any evidence connecting Ms. Gorham's actions to Ms. Comer's decision. *See Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002) ("When evaluating a charge of employment discrimination, [the court] must focus on the actual knowledge and actions of the decision-maker").

Accordingly, Ms. Walden has not created a convincing mosaic of circumstantial evidence to allow a reasonable jury to infer intentional discrimination. The court therefore **WILL GRANT** the motion with respect to Counts Four and Five.

3. Count Three

Count Three alleges that Robins & Morton discriminated against Ms. Walden because of her sex in violation of Title VII. (Doc. 1 ¶¶ 61–66). Ms. Walden again relies on both the *McDonnell Douglas* and convincing mosaic frameworks. (*See* doc. 22 at 30–31). In support of her claim, Ms. Walden provides evidence of pretext and comparators. (*Id.* at 30–34). Ms. Walden's pretext section for sex discrimination consists of the same evidence and arguments as her race discrimination section. (*Id.* at 31–34). So her pretext argument fails for the same reasons outlined above. Accordingly, the court considers only whether Ms. Walden's comparators satisfy the *McDonnell Douglas* or convincing mosaic standards.

Ms. Walden offers five male comparators, but none are "similarly situated in all material respects." *See Lewis*, 918 F.3d at 1231. Four proposed comparators worked in different departments, had different supervisors, and committed different offenses. (Doc. 18-4 ¶¶ 9–10; doc. 18-2 at 110; *see* doc. 21-11 at 3); *see Walker*, 286 F.3d at 1274. One comparator—Jacob Davenport—worked in human resources and reported to Ms. Comer. (Doc. 18-1 at 7). Like Ms. Walden, Mr. Davenport failed to

complete an assigned task. (*Id.* at 7–8). But Ms. Walden provided no evidence that Ms. Comer believed that Mr. Davenport exhibited the other issues attributed to Ms. Walden, such as being unprofessional and unresponsive during the workday. (*See* doc. 22 at 30). So Ms. Walden has not satisfied her burden to produce evidence of a similarly situated comparator that was treated more favorably. *See Lewis*, 918 F.3d at 1222 ("[D]iscrimination consists of *treating like cases differently*.").

Relatedly, Ms. Walden's comparators cannot establish a convincing mosaic. As the court explained above, "distinguishable comparators, standing alone, do not raise a reasonable inference of unlawful conduct." *Johnson*, 169 F.4th at 1310.

Thus, the court **WILL GRANT** the motion with respect to Count Three.

## III. CONCLUSION

The court **WILL GRANT** the motion and **WILL ENTER SUMMARY JUDGMENT** on all claims in Robins & Morton's favor and against Ms. Walden. (Doc. 17). The court will enter a final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 21, 2026.

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE